# IN THE MATTER OF THE PETITION OF KAIAHUA (k) FOR A WRIT OF HABEAS CORPUS FOR AND ON BEHALF OF ANAMALIA MAUNAKEA (w).

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 5, 1908.                    DECIDED OCTOBER 17, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

HABEAS CORPUS—*detention of leper suspect.*

Upon habeas corpus questioning the legality of the detention of a leper suspect, the only issue is the regularity of the proceedings under the statute, and the existence or nonexistence of leprosy will not be determined collaterally.

LEPROSY—*construction of statute.*

R. L. Sec. 1122A applies to all persons in custody as leper suspects, whether arrested under warrant or not.

LEPROSY—*proceedings under statute.*

A leper suspect in custody having selected a physician to examine her in accordance with the statute, and being thereafter

required without legal cause to select another, cannot be held to have waived her rights; and subsequent proceedings with the second physician are void.

## OPINION OF THE COURT BY BALLOU, J.

This is an appeal by the president of the board of health from the order of the circuit judge of the first circuit discharging from custody Anamalia Maunakea, brought before him on a writ of habeas corpus. The return alleged that Mrs. Maunakea, hereinafter called the petitioner, was held in custody under the provisions of S. L. 1907, Act 122, amending R. L. Sec. 1122 and adding a new section as follows:

"Section 1122. Lepers, Confinement. The Board of Health or its agents are authorized and empowered to cause to be isolated and confined in some place or places for that purpose provided, all persons suffering with leprosy who shall be pronounced capable of spreading that disease; and it shall be the duty of each District Magistrate when properly applied to for that purpose by the Board of Health or its authorized agents to issue a penal summons to any person alleged to be suffering with leprosy or deemed capable of spreading that disease, ordering him to appear at the time and place specified in the application for such summons, then and there to submit to a medical examination for the purpose of determining whether or not he is suffering from leprosy; and in the event that such person shall fail to appear in answer to such summons said District Magistrate shall cause the arrest of such person and his delivery to the Board of Health or its agents; and it shall be the duty of the High Sheriff of the Territory of Hawaii and his deputies and of the police officers to assist in securing the conveyance of any person so summoned or arrested to such place as the Board of Health or its agents may direct, in order that such person may be subjected to a medical examination, and thereafter to assist in removing such person to a place of treatment or isolation if so required by the agents of the Board of Health. Provided, however, that such medical examination shall, in all cases, be made with the least possible delay after such summons or arrest as aforesaid."

"Section 1122A.  Examination.  With the least possible delay after a person has been taken into custody as provided in Section 1122 of the Revised Laws, the Board of Health shall cause such person to be carefully examined by two physicians duly licensed to practice medicine in this Territory; one of such physicians shall be chosen by the Board, and the other by the person taken into custody, or if such a person is a minor, by his parents, parent or guardian; if such person or his representatives shall fail to select a physician within ten days after the Board's selection, such right shall be lost, and the Board shall select two physicians.  If the two physicians after the completion of such examination shall agree that such person is not suffering with leprosy, nor capable of spreading that disease, such person shall be released from custody and furnished by the Board with transportation home; but if the two physicians agree that such person is suffering with leprosy, and capable of spreading that disease, such person shall remain in the custody of the Board, and be confined in such place as is therefor provided by law.  In case of disagreement between the two physicians as to whether such person is or is not suffering with leprosy and capable of spreading that disease, they shall, with as little delay as possible, select a third so licensed physician, and the three physicians shall proceed to make a second examination.  On the completion of such second examination, the decision of any two of the three physicians that such person is or is not suffering with leprosy and capable of spreading that disease shall determine whether such person shall be released or confined in the manner hereinbefore provided."

The evidence shows that the petitioner, being suspected of having leprosy, was notified by Dr. Goodhue on Hawaii to report at the Kalihi receiving station for examination.  She came to Honolulu with other leper suspects and was met by an agent of the board of health who took her to the receiving station.  Here, in accordance with the act quoted, she was notified to select a physician to examine her and selected Dr. J. Atcherley, who, with Dr. McDonald, nominated by the board of health, made an examination.  Dr. McDonald signed a certificate that the patient was suffering with, leprosy and capable of

spreading that disease. Upon this certificate being presented to Dr. Atcherley he refused to sign it stating orally that the patient had leprosy but that he would not certify that she was capable of spreading the disease. There is no evidence of any further action being requested of Dr. Atcherley. Three months afterwards the petitioner was asked to select another doctor, being told by the keeper of the receiving station that Dr. Atcherley was not allowed to come there. Thereupon after some demur she selected Dr. McLennan. Dr. McLennan certified that he was unable to say whether or not the patient had or was afflicted with leprosy and he and Dr. McDonald selected Dr. Sinclair as the third physician, who certified that the patient was suffering with leprosy and capable of spreading that disease. The return of the president of the board of health set up this certificate of two doctors as justification for holding the petitioner in custody.

We cannot sustain the respondent's contention that the fact of the existence or nonexistence of leprosy is to be determined upon habeas corpus proceedings. This would enable every person regularly pronounced a leper to have the decision of the board of examining physicians reviewed by the court, which is not the tribunal designated by the legislature for that purpose. In these proceedings the legality of the detention depends upon the regularity of the proceedings by virtue of which the petitioner is held in custody. Under the amended statute a leper suspect may be held in custody only long enough to make the prescribed examination with the least possible delay, and thereafter only upon decision, rendered in accordance with the statute, that he is suffering with leprosy and capable of spreading that disease.

On the other hand we do not, as contended by the petitioner, construe the statute as requiring a penal summons followed by an arrest under warrant as conditions precedent in all cases to the examination prescribed by Sec. 1122A. The reference in

the opening sentence of the paragraph to persons taken into custody as provided in Sec. 1122 does not expressly or by necessary implication exclude from the benefits of that section persons who have voluntarily surrendered themselves into custody for the purpose of examination nor those who have appeared in response to a penal summons. The intent of the legislature would have to be more clearly expressed before we could find that it was intended to give the safeguards of Sec. 1122A to the recalcitrant and deny them to those appearing voluntarily or upon simple notification.

The first physician selected by the petitioner in accordance with her rights under the statute was Dr. Atcherley, and in the orderly course of procedure the final determination in case of disagreement would have been made by a board, the third member of which was selected by him and Dr. McDonald. We are not required to say what the procedure would be in case either physician unreasonably refused to proceed in accordance with the statute, as there is no evidence of such refusal in this case. The question here turns on the regularity of the selection of Dr. McLennan with the selection of Dr. Atcherley still outstanding. Undoubtedly there are circumstances under which the patient could waive her rights and nominate another physician. Such a waiver, however, would have to be made with full knowledge of the facts. In the case at bar the evidence warrants the conclusion that the patient was required by the board of health to select another physician without legal cause therefor. Whether or not she was intimidated by a threat to send her to Molokai as claimed in her testimony is immaterial, as the conclusion can be based wholly upon the testimony of the keeper of the receiving station, called for the respondent in rebuttal, who testified that he had told her that she had to choose another doctor because Dr. Atcherley was not allowed to come there again. The nomination of a second doctor under these circumstances cannot be held to be a waiver of her rights.

In re Maunakea, 19 Haw. 218.

The order appealed from is affirmed..

*C. W. Ashford* for petitioner.

*W. L. Whitney, Deputy Attorney General,* and *C. R. Hemenway, Attorney General,* for respondent.